P.O. Box 810 • Wetumpka, Alabama 36092 • (334) 567-1123

## IN THE CIRCUIT COURT OF ELMORE COUNTY, ALABAMA

CHARLESTYNE BICKLEY )
)
    Plaintiff, )
)
v. ) Civil Action No.: CV 06-8
)
MEDTRONIC ) JAN 9 2006
)



MEDTRONICS, INC., a corporation, **No. 1**, whether singular or plural, that entity or those entities who or which designed the product and its component parts involved in the occurrence made the basis of this lawsuit, or any component part thereof; **No. 2**, whether singular or plural, that entity or those entities who or which manufactured, assembled, installed, or implanted the product and/or its component parts involved in the occurrence made the basis of this lawsuit, or any component part thereof; **No. 3**, whether singular or plural, that entity or those entities who or which had any role in the distributive chain regarding the product and its component parts involved in the occurrence made the basis of this lawsuit or any component part thereof, including any and all sales representatives of the manufacturer(s); **No. 4**, whether singular or plural, that entity or those entities who or which, prior to the occurrence made the basis of this lawsuit, altered or repaired the product and its component parts involved in said occurrence or any component part thereof; **No. 5**, whether singular or plural, that entity or those entities who or which failed to warn or issued inadequate warnings or instructions regarding the use or operation of the product and its component parts involved in the occurrence made the basis of this lawsuit or any component part thereof; **No. 6**, whether singular or plural, that entity or those entities which provided workmen's compensation, product liability and/or general liability insurance coverage for the manufacturer and/or distributor of the product and its component parts involved in the occurrence made the basis of this lawsuit at the time of said occurrence or at any time prior thereto; **No. 7**, whether singular or plural, that entity or those entities who or which was responsible for advertising the product and its component parts involved in the occurrence made the basis of this lawsuit or any component part thereof; **No. 8**, whether singular or plural, that entity or those entities who or which did any consulting work, i.e, advertising, engineering, etc., referable to such design, manufacture and/or assembly of the product and its component parts involved in the occurrence made the basis of this lawsuit or any component part thereof; **No. 9**, whether singular or plural, that entity or those entities, who or which tested, inspected, approved or issued any approval of the product and its component parts involved in the occurrence made the basis of this lawsuit, or any component part thereof; **No. 10**, whether singular or plural, that entity or those entities who or which conducted safety inspections or analyses of or with reference to the product and its component parts involved in the occurrence made the basis of this lawsuit, or any component part thereof, and/or the design or manufacturing process of each such product, including but not limited to the products liability insurance carrier for the manufacturer or distributor of any of the aforesaid products; **No. 11**, whether singular or plural, that entity or those entities who or which was responsible for the defective condition of the product and its component parts involved in the occurrence made the basis of this lawsuit on the date of said occurrence or any component part thereof; **No. 12**, whether singular or plural, that entity or those entities who allowed or placed the product and its component parts involved in the occurrence made the basis of this lawsuit into the stream of commerce in a defective and hence unreasonably dangerous condition; **No. 13**, whether singular or plural, that entity or those entities, other than those entities described above, whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit; **No. 14**, whether singular or plural, that entity or those entities, that individual or those individuals, other than those individuals and entities described above, whose negligence, wantonness, fraudulent, or other wrongful conduct contributed to cause the occurrence made the basis of this lawsuit; **No. 15**, whether singular or plural,



that entity or those entities who or which provided any insurance coverage, of whatever kind or *character*, to any of the named or fictitious defendants herein; **No. 16**, whether singular or plural, that entity, other than those entities described above, which is the successor in interest of any of those entities described above; **No. 17**, whether singular or plural, that entity or those entities who or which provided maintenance and upkeep on the product and its component parts involved in the occurrence made the basis of this lawsuit; **No. 18**, whether singular or plural, that entity or those entities who or which did any repair and/or replacement work on the product and its component parts involved in the occurrence made the basis of this complaint; **No. 19**, whether singular or plural, that entity or those entities who or which was responsible for the condition or state of repair of the product and its component parts involved in the occurrence made the basis of this lawsuit; **No. 20**, whether singular or plural, that entity or those entities, that individual or those individuals who or which repaired, replaced, altered, or maintained the product and its component parts involved in the occurrence made the basis of this lawsuit; **No. 21**, whether singular or plural, that entity or those entities who or which had supervisory authority relating to the maintenance and operation of the product and its component parts involved in the occurrence made the basis of this lawsuit; **No. 22**, whether singular or plural, that entity or those entities other than those entities described above, which was the predecessor corporation of any of the entities described above. **No. 23**, whether singular or plural, that entity who or which installed or implanted the product involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; **No. 32**, whether singular or plural, that entity or those entities who or which conducted safety testing, studies, inspections or analyses of or with reference to the product or its component parts involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith and/or the design or manufacturing process of each said product including, but not limited to, the products liability insurance carrier for the manufacturer or distributor of any of the aforesaid products; Plaintiff avers that the true identities of the foregoing fictitious parties defendant are otherwise unknown to the plaintiffs at this time, or, if their names are known to the plaintiffs, their identities as proper parties defendant are not known at this time, and their true names will be substituted when ascertained, et al.,

Defendants.                )
                           )

## COMPLAINT

(JURY TRIAL DEMANDED)

COMES THE PLAINTIFF, Charlestyne Bickley ("the Plaintiff"), by and through counsel of record, and brings this action against Medtronics, Inc., in support of which the Plaintiff avers as follows:

### PARTIES AND JURISDICTION

1.  The Plaintiff is a citizen and resident of Elmore County, Alabama.

2.  The surgical procedure to implant into the chest and heart of the Plaintiff a

defibrillator designed, manufactured, tested, marketed, distributed, promoted, and sold by the defendant was performed in the State of Alabama.

3. Medtronics, Inc. ("Medtronics") is, upon information and belief, a foreign corporation doing business in Alabama, at all times relevant hereto. The activities of the Defendant in Alabama include, but are in no way limited to, the marketing, distribution, promotion, and sales of implantable defibrillators, such as the one(s) surgically implanted into the chest and heart of the Plaintiff.

4. This Court has jurisdiction over the subject matter and parties to this action.

## FACTUAL ALLEGATIONS

5. Medtronics designs, manufactures, tests, markets, distributes, promotes, and sells electronic medical devices such as pacemakers and implantable defibrillators, including the 7289 model implanted in the Plaintiff.

6. On or about September 13, 2004, Medtronics sold the Plaintiff a defibrillator, which along with lead wires was surgically implanted into chest and heart of the Plaintiff.

7. Medtronics has given notice that defibrillators such as the one implanted in the plaintiff contains numerous design and construction defects, and has suggested the Plaintiff and all other purchasers of the defibrillator have the defibrillator replaced. The Plaintiff has not undergone a procedure to have the implantable defibrillator removed and/or replaced.

8. The Plaintiff suffered great physical and emotional pain and suffering as a proximate result of the defective defibrillator that was surgically implanted. Additionally, the

Plaintiff has suffered or and/or will suffer great physical and emotional pain and suffering and expense in replacing the defective Medtronics' defibrillator.

9. The design and constructions defects are in violation of industry standards and applicable codes.

## COUNT ONE

(Strict Liability/Failure to Warn)

10. The Plaintiff adopts, realleges, and incorporates herein by reference, as if fully set out herein, each and every preceding count, paragraph, cause of action, and allegation set forth hereinabove.

11. At the aforementioned time and place, and for some time prior thereto, the defendant, Medtronics and fictitious party defendants, were engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting, and/or selling the subject implantable defibrillator and its component parts throughout the United States, including the state of Alabama, for consumption and use by certain members of the general public, including the physician(s) and medical practice(s) involved in surgical implantation of the device into the chest and heart of the Plaintiff.

12. During said period of time, and for valuable consideration received, Medtronics, designed, manufactured, tested, marketed, distributed, promoted and/or sold the subject defective implantable defibrillator that injured the plaintiff, causing the injuries and damages set forth herein.

13. At the aforesaid time and place -- i.e., when and while surgically implanted in the Plaintiff -- said defective implantable defibrillator and its component parts were in substantially the same condition as when designed, manufactured, tested, marketed, distributed, promoted and/or sold, and were being used in a manner that was foreseeable.

14. The said Medtronics implantable defibrillator and its component parts were not reasonably safe when being used in a foreseeable manner, but, to the contrary, were defective and unreasonably dangerous to the human body when being so used. The defendants knew, or in the exercise of reasonable care should have known, that said implantable defibrillator and its component parts were defective and unreasonably dangerous to the human body when being so used in a foreseeable manner.

15. The foregoing wrongful conduct in a violation of the Alabama Extended Manufacturer's Liability Doctrine.

16. The defendant failed to warn of the defects and malfunctioning of defibrillators such as the one implanted in the Plaintiff, and failed to disclose its knowledge of such defects and malfunctioning of the devices, despite having actual knowledge.

17. As a direct and proximate result, The Plaintiff suffered and continues to suffer injuries and is entitled to damages for pain and suffering, physical and emotional distress, the amount of costs associated with all aspects of the implantation and replacement of the defective and unreasonably dangerous defibrillator, any and all consequential damages, punitive damages where appropriate, plus interest, attorney fees, and costs.

WHEREFORE, on the basis of the foregoing, the Plaintiff requests that the Jury selected to hear this case render a verdict for the Plaintiff against the defendant, and that the Jury award damages to plaintiff in an amount which will adequately reflect the enormity of the defendant's wrong in causing the injuries and damages of the plaintiff, and which will effectively prevent other similarly caused injuries.

## COUNT TWO

(Strict Liability - Design and Manufacturing Defects)

18. The Plaintiff adopts, realleges, and incorporates herein by reference, as if fully set out herein, each and every preceding count, paragraph, cause of action, and allegation set forth hereinabove.

19. The defendant, Medtronics, and fictitious party defendants, were engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting and/or selling the said implantable defibrillator and its component parts involved in the occurrence made the basis of plaintiff's Complaint. As such, the defendants are guarantors of the safety of the device.

20. As herein alleged, the Medtronics defibrillator(s) implanted in the Plaintiff were defective in design.

21. Additionally, or alternatively, the Medtronics defibrillator(s) manufactured by the defendant, implanted in the Plaintiff, were produced with a manufacturing defect.

22. As a result of the defendant's defective design and/or manufacturing defect, the Medtronics defibrillators were in a defective condition, unreasonably dangerous to the Plaintiff at

the time of sale by the Defendant, and at the time of implantation for the devices' intended purposes.

23. At the time of manufacture and sale of the defibrillators, the defendants were aware of the purpose and manner of their usage. The defendants knew that the products would reach consumers without substantial and/or significant change in the condition in which the defendant sold the devices, and the Medtronics defibrillators in fact reached consumers, such as the Plaintiff, without substantial and/or significant change in condition.

24. Defibrillators manufactured by the defendant, Medtronics, one or more of which was implanted in the Plaintiff, were defective and unreasonably dangerous when implanted, due to the possibility of cardiac failure or injury resulting from defect(s) in the device.

25. As a proximate result of the failures and actionable wrongful conduct herein alleged, the defibrilator(s) implanted in the Plaintiff were in a defective condition, unreasonably dangerous in that they were and are unsafe for their intended use, and were lacking one or more elements necessary to make them safe for their intended use.

26. As a direct and proximate result, the Plaintiff suffered and continues to suffer injuries and is entitled to damages for pain and suffering, physical and emotional distress, the amount of costs associated with all aspects of the implantation and replacement of the defective and unreasonably dangerous defibrillator, any and all consequential damages, punitive damages where appropriate, plus interest, attorney fees, and costs.

WHEREFORE, on the basis of the foregoing, the Plaintiff requests that the Jury selected to hear this case render a verdict for the Plaintiff against the defendant, and that the Jury award

damages to plaintiff in an amount which will adequately reflect the enormity of the defendant's wrong in causing the injuries and damages of the plaintiff, and which will effectively prevent other similarly caused injuries.

## COUNT THREE

(Negligence and Wanton Conduct)

27. The Plaintiff adopts, realleges, and incorporates herein by reference, as if fully set out herein, each and every preceding count, paragraph, cause of action, and allegation set forth hereinabove.

28. The defendant, Medtronics, and fictitious party defendants, were engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting and/or selling the said implantable defibrillator and its component parts involved in the occurrence made the basis of plaintiff's Complaint.

29. As such, the defendant had a duty, and owed a duty to the Plaintiff, to exercise reasonable care in the design, manufacture, testing, marketing, distributing, promoting, and/or selling of the defibrillators and their component parts, including a duty to assure that the devices did not short-circuit or otherwise malfunction when used for their intended purpose(s), as well as a duty to warn of know defects that created risk of, may lead, had in fact led, and/or were known or should have been known to lead, to serious injury or death.

30. The defendant breached its duties by negligently designing, manufacturing, testing, marketing, distributing, promoting and/or selling the said implantable defibrillator and its component parts involved in the occurrence made the basis of plaintiff's Complaint.

31. The defendant knew or should have known that heart patients such as the Plaintiff would foreseeably suffer injuries as a proximate result of the defendant's failure to exercise ordinary, reasonable, and due care, as described herein.

32. The defendant, Medtronics, and fictitious party defendants, as the designers, manufacturers, testers, marketers, distributors, promoters and/or sellers of the said implantable defibrillator and its component parts involved in the occurrence made the basis of plaintiff's Complaint, negligently and/or wantonly breached its duties by failing to warn the Plaintiff of the dangers associated with the use of said implantable defibrillator and its component parts due to its defective and unsafe condition as aforementioned, and such negligent and/or wanton conduct was a proximate cause of the injuries and damages of the Plaintiff.

33. As a direct and proximate result of the defendant's failure to provide appropriate warnings concerning its defibrillators, and as a result of the negligence, carelessness, gross negligence, wanton conduct, and other wrongdoing and actionable wrongful conduct as described herein, the Plaintiff had the defibrillator(s) manufactured by the defendant implanted, and has suffered, and will continue to suffer the injuries and damages described herein.

34. As a direct and proximate result, the Plaintiff suffered and continues to suffer injuries and is entitled to damages for pain and suffering, physical and emotional distress, the amount of costs associated with all aspects of the implantation and replacement of the defective

and unreasonably dangerous defibrillator, any and all consequential damages, punitive *damages* where appropriate, plus interest, attorney fees, and costs.

WHEREFORE, on the basis of the foregoing, the Plaintiff requests that the Jury selected to hear this case render a verdict for the Plaintiff against the defendant, and that the Jury award damages to plaintiff in an amount which will adequately reflect the enormity of the defendant's wrong in causing the injuries and damages of the plaintiff, and which will effectively prevent other similarly caused injuries.

## COUNT FOUR

(Breach of Express and Implied Warranties)

25. The Plaintiff adopts, realleges, and incorporates herein by reference, as if fully set out herein, each and every preceding count, paragraph, cause of action, and allegation set forth hereinabove.

26. The defendant, Medtronics, and fictitious party defendants, were engaged in the business of designing, manufacturing, testing, marketing, distributing, promoting and/or selling the said implantable defibrillator and its component parts involved in the occurrence made the basis of plaintiff's Complaint, for ultimate use by and implantation in the bodies of heart-disease patients, including the Plaintiff, by and through physicians, hospitals, and other health-care providers.

27. As such, Medtronics is a merchant of defibrillators.

28.     By placing Medtronics defibrillators into the stream of commerce, the defendant impliedly warranted that its implantable defibrillators, such as the one(s) implanted in the Plaintiff, were merchantable, and fit, suitable, and safe for their intended use(s).

29.     The Medtronics defibrillators placed into the stream of commerce by the defendant, such as and including the one(s) ultimately implanted into the Plaintiff, were defective, fail in their essential purpose(s), and are not merchantable, fit, suitable, and/or safe for their intended use(s).

30.     The Medtronics defibrillators placed into the stream of commerce by the defendant, such as and including the one(s) ultimately implanted into the Plaintiff, were also inadequately contained, packaged, and labeled in that the defendant misrepresented and/or omitted material facts regarding the safety, reliability, and effectiveness of the devices, which were thus neither merchantable nor fit, nor safe or suitable for their intended use(s).

31.     The defects in the Medtronics defibrillators, such as and including the one(s) ultimately implanted into the Plaintiff, were present at the time the product(s) left the hands of the defendants and placed into the stream of commerce.

32.     The defendant thus breached implied warranties of merchantability, fitness and suitability with respect to the implantable defibrillator(s) such as and including the one(s) ultimately implanted into the Plaintiff.

33.     The Plaintiff was a foreseeable user of the implantable defibrillator, and as a direct and proximate result of the defendant's breach of implied warranties, the Plaintiff suffered and will suffer the injuries and damages described herein, for which the defendant is liable.

34. Medtronics both expressly and impliedly warranted the defibrillator would be designed and constructed in a careful, diligent, and workmanlike manner, free of design and construction deficiencies, and would be safe, reliable, and effective in performing its intended and foreseeable use(s).

35. Medtronics breached its express warranties, and has been given proper and timely notice of such breach.

36. As a direct and proximate result, the Plaintiff suffered and continues to suffer injuries and is entitled to damages for pain and suffering, physical and emotional distress, the amount of costs associated with all aspects of the implantation and replacement of the defective and unreasonably dangerous defibrillator, any and all consequential damages, punitive damages where appropriate, plus interest, attorney fees, and costs.

WHEREFORE, on the basis of the foregoing, the Plaintiff requests that the Jury selected to hear this case render a verdict for the Plaintiff against the defendant, and that the Jury award damages to plaintiff in an amount which will adequately reflect the enormity of the defendant's wrong in causing the injuries and damages of the plaintiff, and which will effectively prevent other similarly caused injuries.

## COUNT FIVE

(FRAUD, MISREPRESENTATION AND/OR CONCEALMENT)

37. The Plaintiff adopts, realleges, and incorporates herein by reference, as *if fully set out herein*, each and every preceding count, paragraph, cause of action, and allegation set forth hereinabove.

38. The defendant, Medtronics, had a duty to exercise reasonable care in the design, manufacture, testing, marketing, distributing, promoting, and/or selling of the defibrillators and their component parts, including a duty to assure that the devices did not short-circuit or otherwise malfunction when used as instructed by the defendant and for their intended and foreseeable purpose(s), and a duty to warn of know defects that may lead to serious injury or risk of serious injury.

39. The defendant, Medtronics, made misrepresentations of material facts, including but not limited to:

   a. misrepresenting that the Medtronics defibrillators were fit for their intended uses and of merchantable quality;

   b. misrepresenting that the Medtronics defibrillators were "reliable" and did not meet the criteria for "extraordinary communication" with physicians and/or patients;

   c. misrepresenting that the Metronics defibrillators were safe and effective in the treatment of the medical conditions, such as that affecting the Plaintiff, for which they were intended.

   d. misrepresenting that the Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, would function as intended when necessary;

   e. misrepresenting that the Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, would not function improperly and when unnecessary;

   f. misrepresenting that Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, were not defective, such that they would short-circuit or

      otherwise fail to function as intended when put to their expected, intended, foreseeable, and/or ordinary purpose(s); and

   g.   misrepresenting that Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, were not inherently dangerous;

40.   The defendant, Medtronics, made omissions of material facts, known to the defendant and which the defendant was obligated to disclose, including but not limited to:

   a.   omitting to disclose the material fact that the Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, were defective, such that they would short-circuit and/or otherwise fail to function as intended;

   b.   omitting to disclose the material fact that the defendant knew of numerous failures of the Medtronics defibrillators;

   c.   omitting to disclose the material fact that the Medtronics defibrillators were not "reliable" and did not meet the criteria for "extraordinary communication" with physicians and/or patients;

   d.   omitting to disclose the material fact that the Metronics defibrillators were not safe and effective in the treatment of the medical conditions, such as that affecting the Plaintiff, for which they were intended.

   e.   omitting to disclose the material fact that the Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, would not function as intended when necessary;

   f.   omitting to disclose the material fact that the Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, would not function improperly and when unnecessary;

   g.   omitting to disclose the material fact that Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, were defective, such that they would short-circuit or otherwise fail to function as intended when put to their expected, intended, foreseeable, and/or ordinary purpose(s); and

   h.   omitting to disclose the material fact that Medtronics defibrillators, such as the one(s) implanted in the Plaintiff, were inherently dangerous;

41.   These misrepresentations and/or omissions of material fact were false and misleading at the time they were made.

42. The defendant negligently and/or carelessly made the foregoing misrepresentations of material fact without basis or adequate information on which to accurately base those representations; or, the foregoing material facts were omitted by the defendant negligently and/or carelessly without basis or adequate information upon which to justify such omissions of material fact.

43. Alternatively, when the defendant made the foregoing misrepresentations or omissions of material fact, they knew or should have known them to be false or omissions of material fact, and such misrepresentations and/or omissions of material fact were made intentionally, deliberately, knowingly, wantonly, recklessly and/or in a grossly negligent manner.

44. In reliance upon the foregoing misrepresentations and/or omissions of material fact by the defendant, the Plaintiff and/or the Plaintiff's physician(s) were induced to and did, to their detriment, subject themselves to using the Medtronics defibrillators. Had the foregoing misrepresentations and/or omissions of material fact not been made by the defendant, the Plaintiff and/or the Plaintiff's physician(s) could have avoided such risks, injuries, and/or damages as are set forth herein, and/or considered alternative actions, treatments, or devices. The reliance of the Plaintiff and the Plaintiff's physician(s) was justified and reasonable, because the foregoing misrepresentations and/or omissions of material facts were made by individuals and entities who were in a position to know the true facts.

45. As a direct and proximate result, the Plaintiff suffered and continues to suffer injuries and is entitled to damages for pain and suffering, physical and emotional distress, the amount of costs associated with all aspects of the implantation and replacement of the defective

and unreasonably dangerous defibrillator, any and all consequential damages, punitive damages where appropriate, plus interest, attorney fees, and costs.

WHEREFORE, on the basis of the foregoing, the Plaintiff requests that the Jury selected to hear this case render a verdict for the Plaintiff against the defendant, and that the Jury award damages to plaintiff in an amount which will adequately reflect the enormity of the defendant's wrong in causing the injuries and damages of the plaintiff, and which will effectively prevent other similarly caused injuries.

_____
Paul C. Garrison (GAR064),
Attorneys for the Plaintiff

**OF COUNSEL:**

HOLLIS & WRIGHT, P.C.
1750 Financial Center
505 North 20th Street
Birmingham, AL 35203
(205) 324-3600
(205) 324-3636

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

_____
OF COUNSEL

## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL ADDRESSED AS FOLLOWS:

Medtronics, Inc.

IN THE CIRCUIT COURT OF ELMORE COUNTY, ALABAMA

Charlestyne Bickley
Plaintiff,

FILED
2006 JAN 20 AM 11 18
LARRY COX
CIRCUIT CLERK ELMORE CO ALA

vs.

Medtronic
Defendant.

Case No. CV 06-8

### ORDER FOR NON-FILING OF CIVIL DISCOVERY

Pursuant to Rule 5 A.R.Civ.P. (as amended) it is ORDERED that unless the Court directs otherwise, in this cause:

1. Interrogatories, requests for production, requests for admissions and responses thereto, and notices of depositions shall be served in accordance with Rule 5(b), A.R.Civ.P., but shall not be filed with the Clerk except upon order of the Court or for use at trial or in connection with motions. The party responsible for service of the discovery material shall retain the original and become the custodian.

2. No notice of deposition or depositions shall be filed with the Clerk unless the Court directs otherwise, or unless in support of or in opposition to a motion. Counsel who notices a deposition shall be the custodian of the deposition and shall maintain the original for filing if the Court so directs.

3. If discovery materials are germane to any motion or response, only the relevant material shall be filed with the motion or response.

4. Whenever any discovery material (request, response, notice) is served, counsel shall contemporaneously deliver to the Clerk a notice identifying the date of service and the nature of the material served or the first and last page of the document served including the certificate of service. These notices shall be maintained by the Clerk with the civil action file but will not be docketed.

5. During the pendency of any case the custodian of any discovery material shall provide to counsel for all other parties reasonable access to the material and an opportunity to duplicate the material at the expense of the copying party, and any other person may with leave of Court obtain a copy of any discovery material from its custodian upon payment of the expense of the copy.

DONE and ORDERED the 20 day of Jan 2006

BEN A. FULLER - Circuit Judge

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   Medtronic World Headquarters
   c/o Arthur Collius
   710 Medtronic Parkway
   Minneapolis, MN 55432-5604

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
                                 1-30-06

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:     ☐ No

   CV 06-8

3. Service Type
   ☒ Certified Mail      ☐ Express Mail
   ☐ Registered          ☒ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)
   7005 1820 0007 5544 9380